IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PHILLIP EARL CRENSHAW, JR.,
      Petitioner,

vs.                        Case No.:  3:15cv253/LAC/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 15).  Petitioner filed a reply (ECF No. 19).

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show

that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established

by the state court record (*see* ECF No. 15).[1]  Petitioner was charged in the Circuit

Court in and for Escambia County, Florida, Case No. 2012-CF-1060, with one count

of robbery with a firearm (Count 1) and one count of battery (Count 2) (Ex. A at 3).

Following a jury trial, he was found guilty as charged (Ex. A at 68, Ex. Q).  On March

7, 2013, Petitioner was sentenced to thirty (30) years in prison, with a 10-year

minimum mandatory pursuant to Florida's 10-20-Life statute for possession of a

firearm, and with pre-sentence jail credit of 373 days, on Count 1 (Ex. A at 99–140).

Petitioner was sentenced to a concurrent term of twelve (12) months in the county jail,

with pre-sentence jail credit of twelve (12) months, on Count 2 (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District

Court of Appeal ("First DCA"), Case No. 1D13-1361 (Exs. B, C).  The First DCA

affirmed the judgment per curiam without written opinion on September 30, 2013,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

with the mandate issuing October 16, 2013 (Exs. D, E).  Crenshaw v. State, 121 So. 3d 1040 (Fla. 1st DCA 2013) (Table).

On February 10, 2014, Petitioner filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel (Ex. F).  The First DCA denied the petition on the merits on February 26, 2014 (Ex. G).  Crenshaw v. State, 156 So. 3d 5 (Fla. 1st DCA 2014) (Mem).

On July 15, 2014, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. H).  The state circuit court summarily denied the motion in an order rendered October 30, 2014 (Ex. I). Petitioner appealed the decision to the First DCA, Case No. 1D14-5301 (Exs. J, K). The First DCA affirmed the decision per curiam without written opinion on January 28, 2015, with the mandate issuing April 1, 2015 (Exs. L, M).  Crenshaw v. State, 160 So.412 938 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on June 2, 2015 (ECF No. 1).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the

Constitution or laws of the United States.  As the instant petition was filed after April

24, 1996, it is subject to the more deferential standard for habeas review of state court

decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In

relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved
>> an unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the evidence
>> presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The

appropriate test was described by Justice O'Connor as follows:

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by
Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer)
in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in
part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter,
Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). "Clearly established Federal law, includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions." Woods v.

Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (citation omitted).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  However, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. See Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas

review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Richter). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by

clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d) does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the

"substance" of such a claim to a state court.  <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S.

Ct. 276, 74 L. Ed. 2d 3 (1982).  In <u>Anderson</u>, the habeas petitioner was granted relief

by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated

due process because it obviated the requirement that the prosecutor prove all the

elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing <u>Sandstrom v.

Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in

which the habeas petitioner cited federal authority was by referring to a state court

decision in which "the defendant . . . asserted a broad federal due process right to jury

instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7.  The Court

expressed doubt that a defendant's citation to a state-court decision predicated solely

on state law was sufficient to fairly apprise a reviewing court of a potential federal

claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*,

459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was

obviously insufficient when the record satisfied the federal habeas court that the

federal claim asserted in the cited case was not the same as the federal claim on which

federal habeas relief was sought.  *Id.*

      Years later, the Supreme Court readdressed the "fair presentation" requirement

in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the

exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds,

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also

consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement

has been interpreted to mean that the rule must be "firmly established and regularly followed," <u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," <u>Judd v. Haley</u>, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  <u>Ford v. Georgia</u>, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  <u>Judd</u>, 250 F.3d at 1313.  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   Ground One:  "The trial court's decision to admit similar fact evidence and the appellate court's affirmance of this decision on appeal resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

Petitioner claims that the trial court erred by admitting "Williams Rule"[6] or collateral crime evidence, specifically, testimony of three individuals, Michael Engeseth, Nan Than, and Joseph Montano, each of whom was robbed while driving

---

[6] Williams v. State, 110 So. 2d 654 (Fla. 1959) (holding that "evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion.") (codified at Fla. Stat. § 90.404(2)(a)).

a taxicab (ECF No. 1 at 6–9).  Petitioner alleges he was charged with robbing a cab

driver, Dewann Joiner, at gun point.  Petitioner alleges Ms. Joiner testified to the

following at trial.  Ms. Joiner was working for the Yellow Cab Company in January

of 2012, and responded to 5101 Cranston Avenue to pick up a fare.  Upon her arrival,

Joiner saw Petitioner standing underneath a carport.  Petitioner approached the cab

and asked to sit in the front seat.  Joiner agreed.  After Petitioner entered the cab, he

began hitting Joiner.  Petitioner told Joiner that she was being robbed and demanded

money.  Joiner gave Petitioner all the money in her pocket, and Petitioner demanded

more and then grabbed the money in Joiner's bra.  Joiner saw a gun.  Joiner identified

Petitioner in court as the robber.

Petitioner alleges the trial court permitted, over objection by defense counsel,

testimony of Engeseth, Than, and Montano, who testified regarding "similar fact

evidence."  Petitioner describes their trial testimony as follows:

> Engeseth testified that he was robbed by the Petitioner while
> working for the Yellow Cab Company in February 2012.  Engeseth said
> he picked up the Petitioner on Hampton Road who directed him to a
> cul-de-sac.  Upon arrival, the Petitioner said he had a gun and demanded
> money.  Engeseth gave him $30, and then the Petitioner was said to have
> told Engeseth if he wasn't gone in a matter of seconds he would shoot.

> Trang [sic] testified that in February 2012, he picked up a fare
> who gave him a turn-by-turn directions[sic]  such as turn left, turn right,
> etc.  The fare directed Trang [sic] to pull into a driveway.  When Trang

[sic] stopped the cab, the fare acted as if he had a weapon and told Trang [sic] he had five seconds to give up all his money.  Trang [sic] did as he was told, and then told the robber that his cab was out of gas and asked for $20 back.  The robber returned $20 to Trang [sic] and asked him not to call the police.

Montano testified that during February 2012, he picked up a fare around Chantilly Way.  The fare directed him to the Raceway gas station at Hwy. 29 and Diamond Dairy.  After reaching the destination, Montana's fare robbed him using an 8-10 inch knife.  After Montano gave up the money, he said the robber told him he had ten seconds to leave before he started shooting.

(ECF No. 1 at 8).

Petitioner contends the trial court's admission of the "Williams Rule" evidence was erroneous, because its probative value was outweighed by its prejudicial effect. He further contends the evidence against him was not so overwhelming as to render the trial court's evidentiary error harmless.  Petitioner contends the trial court's evidentiary ruling violated his constitutional right to a fair trial.  Petitioner asserts he raised this issue on direct appeal, and in his state habeas petition (*id.* at 9).

Respondent asserts a procedural default defense, arguing that Petitioner never presented the federal nature of his claim to the state courts (ECF No. 15 at 8–11). Respondent further contends Petitioner has failed to show cause for, or actual prejudice from, the procedural default; therefore, Petitioner is not entitled to a merits review of his claim in this federal court (*id.*).

In reply, Petitioner contends that in the state trial court and on direct appeal, defense counsel argued that admission of the "<u>Williams</u> Rule" evidence denied Petitioner a fair trial (ECF No. 19 at 2–3).  Petitioner argues, "The words 'fair trial' call to mind a specific right guaranteed by the Sixth Amendment of the United States Constitution." (*id.* at 3).  Petitioner contends that by arguing that he was denied a fair trial, he "clearly put the State court on notice" that the trial court's evidentiary ruling violated his right to a fair trial (*id.*).  Citing decisions of this federal court, Petitioner contends, "The federal question of whether a State court evidentiary ruling violates a criminal Defendant's right to a 'fair trial' is well within the mainstream of constitutional litigation." (*id.*) (citing <u>Pelkey v. Jones</u>, 2015 U.S. Dist. Lexis 34297 (N.D. Fla. 2015); <u>Link v. Tucker</u>, 870 F. Supp. 1309, 1324–30 (N.D. Fla. 2012)).  Alternatively, Petitioner argues that his appellate counsel was ineffective for failing to brief the "federal component" of his claim (*id.* at 4).

On direct appeal, Petitioner captioned his claim as follows:  "The trial court erred by admitting prejudicial collateral crime evidence which became a feature of Appellant's trial." (Ex. C at 9).  Petitioner's substantive argument addressed Florida law, citing Florida's four-factor standard for determining the admissibility of collateral crime evidence, and arguing that the last factor weighed against admission

of the evidence.  Petitioner further argued that the trial court allowed the collateral

crime evidence to become a feature of trial.  The bulk of Petitioner's argument

consisted of his attempt to analogize his case to Cannon v. State, 51 So. 23 1261, 1262

(Fla. 1st DCA 2011), in which the First DCA reversed a conviction because the

combination of the number of witnesses who testified regarding a collateral robbery,

the State's references to the collateral robbery in opening statements and closing

arguments, and the introduction into evidence of a videotape of the collateral robbery,

indicated that the collateral robbery had become a focus of the defendant's trial (*id.*

at 10–12).  Although Petitioner made a passing reference to "a fair trial" in his

appellate brief, he did not cite in conjunction with his claim a federal source of law

on which he relied, nor did he label the claim "federal" or otherwise indicate a federal

law basis for his claim.  Similarly, Petitioner did not cite a single federal case, and the

state cases Petitioner cited did not cite to, or decide the claim on, federal grounds.  The

state cases on which Petitioner relied were either resolved on state law grounds, or

simply articulated Florida's legal standards (*e.g.*, Florida's standard of review,

Florida's test for admissibility of collateral crime evidence, or Florida's harmless error

test).  Petitioner did not argue the federal due process standard:  that the trial court's

evidentiary ruling "so infused the trial with unfairness as to deny due process of law."

Lisenba v. California, 314 U.S. 219, 228, 62 S. Ct. 280, 86 L. Ed. 166 (1941); *see*

Estelle v. McGuire, 502 U.S. 62, 75, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)

(reiterating the due process standard applicable to state-court evidentiary rulings).

The state appellate court summarily affirmed Petitioner's judgment of conviction

without explanation.

The undersigned concludes that Petitioner did not "fairly present" his federal

due process claim to the state courts.  *Compare* McNair, *supra* (holding that petitioner

did not fairly present in state court his federal due process challenge to the jury's

consideration of extraneous evidence; explaining:  "McNair never cited any United

States Supreme Court or federal appellate court case dealing with extraneous

evidence, nor did he mention the presumption of prejudice that arises under federal

law when jurors consider such evidence.  Instead, he relied on state law opinions to

argue a state law claim under a state law standard, citing a lone federal district court

opinion (which itself did not mention the federal presumption of prejudice) only as

part of a string citation illustrating various courts' holdings with respect to extraneous

evidence in the jury room."), *and* Correll v. Sec'y, Dep't of Corr., 932 F. Supp. 2d

1257, 1274–75 (M.D. Fla. 2013) (holding that petitioner procedurally defaulted

federal habeas claim regarding state trial court's admission of collateral crime

evidence; on direct appeal, petitioner argued only that the evidence violated Florida's "Williams Rule," and petitioner failed to alert the state court that admitting the testimony about the earlier incident violated a constitutional right), *with* Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014) (holding that petitioner fairly presented in state court his claim that the trial court denied him the federal due process right to present a defense by excluding testimony of the victim's sisters, where on direct appeal petitioner averred he was entitled to introduce testimony under the Sixth Amendment and twice cited a relevant Supreme Court decision), *and* Kitchen v. Sec'y, Fla. Dep't of Corr., 571 F. App'x 930, 931 (11th Cir. 2014) (holding that petitioner fairly presented in state court his claim that inadequacies in the translation of the trial proceeding violated federal due process, where petitioner's state court pleadings:  (1) cited a federal case to establish that inadequacies in the translation of trial proceedings can violate federal due process if they render a trial "fundamentally unfair," (2) cited cases from states other than Florida, indicating he was not basing his claim solely on Florida law, and (3) cited a federal case in conjunction with his argument that the inadequate translation violated

"the very foundation of due process and a fair trial as guaranteed by the United States Constitution").[7]

Petitioner is now barred by state procedural rules from returning to state court to present the federal constitutional nature of his claim.  *See* Hall v. State, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned"); Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  As further relief is not available in the state courts, Petitioner's claim is procedurally defaulted.

Petitioner argues that his procedural default was caused by ineffective assistance of appellate counsel ("IAAC"), specifically, counsel's failure to brief "the federal component" of his claim of trial court error with respect to the admission of the collateral crime evidence (ECF No. 19 at 4).

---

[7] Petitioner's reliance upon previous decisions of this district court, namely, Link and Pelkey, is misplaced.  In Link, the district court held that the petitioner procedurally defaulted his federal habeas claim regarding the state trial court's admission of a witness's allegedly irrelevant testimony, where the petitioner cited only Florida cases and no federal source of law in support of his claim of trial court error on direct appeal.  870 F. Supp. 2d at 1324.

In Pelkey, the petitioner raised a claim of ineffective assistance of trial counsel ("IATC") with respect to counsel's failure to object to the trial court's admission of collateral crime evidence.  2015 WL 1285777, at *25.  The district court held that the petitioner failed to exhaust his IATC claim, and it was thus procedurally barred from federal review.  *Id.*  The court alternatively determined that the IATC claim was without merit.  *Id.* at *25–27.

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claim, Petitioner must show cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. Petitioner has not established cause for his default. Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003).

Here, Petitioner filed a state habeas petition alleging IAAC in violation of the federal Constitution, but his claim was not based upon appellate counsel's failure to present a federal claim with regard to the trial court's admission of collateral crime evidence. Rather, Petitioner's IAAC claim was based upon appellate counsel's failure to advise him of the availability of, and counsel's failure to seek, discretionary review of the First DCA's decision in the Florida Supreme Court (*see* Ex. F). Because Petitioner did not present to the state courts a claim of IAAC based upon appellate

counsel's failure to assert a federal challenge to the trial court's evidentiary ruling, Petitioner cannot assert IAAC as cause for the procedural default of the federal claim he asserts in Ground One.  Therefore, Petitioner is not entitled to federal review of Ground One through the "cause and prejudice" portal.

Moreover, even if Petitioner's state habeas petition fairly presented his IAAC claim, Petitioner failed to show that the First DCA's rejection of the claim was unreasonable.[8]  The standard for evaluating a claim of ineffective assistance of appellate counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *See* <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted).  The two components of an

---

[8] In the Eleventh Circuit, when the district court reviews a state court's resolution of an ineffective assistance claim in the cause-and-prejudice context, the court applies the same deferential standard as it would when reviewing the claim on its own merit.  In other words, ineffective assistance only provides cause to excuse a procedural default if the state court decision with respect to that ineffective assistance claim:  (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Other circuit courts also follow this approach.  *See* <u>Richardson v. Lemke</u>, 745 F.3d 258, 273 (7th Cir. 2014); *see also* <u>Jackson v. Lafler</u>, 453 F. App'x 620, 624 (6th Cir. 2011) (unpublished) (giving AEDPA deference to state court's rejection of "cause" for procedural default); <u>Sigala v. Quarerman</u>, 338 F. App'x 388, 393 (5th Cir. 2009) (unpublished) (same); <u>Roberson v. Rudek</u>, 446 F. App'x 107, 109 (10th Cir. 2011) (unpublished) (implicitly agreeing with the approach of the Eleventh and Seventh Circuits by affirming district court's invocation of AEDPA deference).  However, at least two other circuit courts review "nested" ineffective assistance issues de novo.  *See, e.g.*, <u>Hall v. Vasbinder</u>, 563 F.3d 222, 236–37 (6th Cir. 2009) (applying de novo standard of review in the cause and prejudice context); <u>Fischetti v. Johnson</u>, 384 F.3d 140, 154–55 (3d Cir. 2004) (same, but relying on pre-AEDPA decision of <u>Coleman v. Thompson</u>, 501 U.S. 722, 755 (1991) in support)).

ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697.  The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was "reasonable considering all the circumstances."  *Id.* at 691.  To demonstrate prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, the petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

To prevail on a claim that a trial court's evidentiary ruling violated the Due Process Clause, a defendant must demonstrate that the evidence was "so extremely unfair that its admission violates fundamental conceptions of justice." Perry v. New Hampshire, — U.S. —, 132 S. Ct. 716, 723, 181 L. Ed. 2d 694 (2012) (citing Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990)).

Here, the First DCA's rejection of Petitioner's IAAC claim could have been based upon the theory that a federal due process challenge to the trial court's evidentiary ruling had no merit.  By affirming Petitioner's conviction on direct appeal, the First DCA necessarily determined that the collateral crime evidence was properly

admitted under Florida law,[9] or that any error in admitting the evidence was harmless,[10] or both.  Any of these determinations was grounds for rejecting a federal due process challenge to the trial court's evidentiary ruling. Therefore, appellate counsel was not deficient for failing to assert a federal due process challenge, and there is no reasonable probability the result of the direct appeal would have been different if appellate counsel had asserted such a challenge.

Petitioner failed to satisfy the "cause and prejudice" standard for overcoming the procedural bar.  Further, he has not shown he is entitled to review of Ground One through any other recognized exception to the procedural bar.  Therefore, Ground One is procedurally barred from federal review.

B.    Ground Two:  "The trial court's summary denial of Ground One of Petitioner's 3.850 relating to counsel's ineffective assistance in failing to object to improper comments during closing arguments, and the appellate court's affirmance of this denial on appeal resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law

---

[9] The Florida Supreme Court has held that before admitting collateral crime evidence, the trial court must make four determinations:  whether the defendant committed the collateral crime; whether the collateral crime meets the similarity requirements necessary to be relevant; whether the collateral crime is too remote, so as to diminish its relevance; and whether pursuant to Florida Statutes Section 90.403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  *See* McWatters v. State, 36 So. 3d 613, 627 (Fla. 2010) (citation omitted).

[10] Under Florida law, an error is harmless if the State proves beyond a reasonable doubt that the error complained of did not contribute to the verdict.  *See* State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

<u>and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."</u>

Petitioner claims that trial counsel was ineffective for failing to object to three categories of prosecutorial comments during closing arguments (ECF No. 1 at 10–12). Petitioner contends the prosecutor's references to the victim's emotional testimony were objectionable because they improperly appealed to the jury's emotions. Petitioner contends the prosecutor's references to the "<u>Williams</u> Rule" evidence were objectionable because they encouraged the jury to convict him based upon prior conduct, instead of the armed robbery with which he was charged. Finally, he contends the prosecutor's references to his guilt were objectionable because the evidence of guilt was far from overwhelming. Petitioner argues there is a reasonable probability he would not have been convicted if defense counsel had objected to the prosecutor's comments.

Respondent contends the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law (ECF No. 15 at 12–29).

### 1. Clearly Established Federal Law

As previously discussed, the standard for evaluating claims of ineffective assistance of counsel is the two-prong <u>Strickland</u> standard. The focus of inquiry under

the performance prong of <u>Strickland</u> is whether counsel's assistance was "reasonable considering all the circumstances."  Strickland, 466 U.S. at 691.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  <u>Strickland</u>, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'"  <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's

performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding would

> have been different.  A reasonable probability is a probability sufficient
> to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u>

for a state court to reject an ineffectiveness claim for failing to prove prejudice by a

preponderance of the evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

    The prejudice assessment does "not depend on the idiosyncracies of the

particular decisionmaker," as the court should presume that the judge or jury acted

according to law.  <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a

conviction, the question is whether there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Further, when the claimed error of counsel occurred at the guilt stage of trial (instead

of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on

appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>,

466 U.S. at 694–95).

    Finally, when a district court considers a habeas petition, the state court's

findings of historical facts in the course of evaluating an ineffectiveness claim are

subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier</u>

<u>v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting <u>Strickland</u>'s high bar

is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176

L. Ed. 2d 284 (2010). "Establishing that a state court's application of <u>Strickland</u> was

unreasonable under § 2254(d) is all the more difficult." <u>Richter</u>, 131 S. Ct. at 788.

As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Id.</u> (citations omitted).

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Ex. H at

14–21). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to object lo improper prosecutorial comments made during closing arguments as to the victim's emotion and as to *Williams* rule witnesses. He asserts had counsel done so, the comments would have been stricken and the trial court would have given a curative instruction and the jury would have returned a not guilty verdict or the issue would have been preserved for appeal.
>
> First, Defendant alleges the prosecutor referred to the victim's tears and emotion on the stand. He contends the purpose was to lend

credence to the victim's testimony identifying Defendant as the perpetrator, and the prosecutor's comments were improper pleas to the jury's sympathy.

Defendant was charged with robbing and battering a cab driver on January 12, 2012. At trial, the victim testified she responded to a call for a cab and picked up Defendant, who hit her and robbed her at gunpoint. (Exhibit A, pp. 54–56.) She also testified she was terrified and scared Defendant was going to shoot her. (Exhibit A, pp. 57–58.) During her testimony, the victim asked for tissue. (Exhibit A, p. 61.) She testified she identified Defendant from a photo lineup on or about February 9, 2012, and she identified him in court as well. (Exhibit A, pp. 62–64.)

As noted by Defendant, during closing, the State made comments as to the victim's emotion on the stand and that she was crying and had tears in her eyes. (Exhibit A, pp. 120, 124–125.) In the context in which these comments were made, the prosecutor was explaining how the victim's demeanor supported her testimony that Defendant was the person who robbed her and she was not mistaken at the time of the offense or at trial as to Defendant's identification. The prosecutor's comments were thus not improper. *See Miller v. State*, 926 So. 2d 1243, 1255 (Fla. 2006); *Whigham v. State*, 97 So. 3d 274, 275–276 (Fla. 1st DCA 2012).

Moreover, defense counsel also utilized the victim's emotional state to support his argument of misidentification. In opening, defense counsel acknowledged the issue was one of identity and asked the jury to listen to how upset the victim was at the time. (Exhibit A, p. 51.) At closing, defense counsel discussed the victim's emotion, arguing the fact she was so upset a year after the incident affected her ability to correctly identify the perpetrator.[FN 1: Trial was held on October 15 and 17, 2012. (Exhibit A.)] (Exhibit A, pp. 128–130.) Counsel further argued the victim's upset demeanor was cause for reasonable doubt. (Exhibit A, p. 132.)

As to the *Williams* rule witnesses, Defendant claims counsel should have objected to comments that Defendant was guilty because of *Williams* rule witness testimony.  As noted by Defendant, the State presented three witnesses, in addition to the victim, who testified as to having been similarly robbed by a person they identified from a photo lineup.  The lineups were introduced into evidence for the jury to view.  (Exhibit A, pp. 94–95, 100–101, 106–107.)  Defense counsel argued at closing the facts associated with the robberies were not so similar as to point to the same person.  (Exhibit A, p. 129.)  In response, the State argued the victim was not wrong in her identification of Defendant, because the other three cab drivers were not wrong either.  (Exhibit A, p. 133.)  The State further noted the similarities among the four robberies and that the jury would have the opportunity to view the photo lineups shown to all four victims.  (Exhibit A, pp. 133–134.)  The jury had been instructed that the *Williams* rule evidence could be considered for limited purposes, including identity.  (Exhibit A, pp. 89–90.)  The State's comments on the *Williams* rule evidence were in rebuttal to the defense closing argument and were for the purpose of arguing identity and thus not improper.  *See Hodges v. State*, 55 So. 3d 515, 538 (Fla. 2010) (where the defense argued identity was the issue, the state could argue collateral crime evidence of identity in rebuttal); *Conde v. State*, 860 So. 2d 930, 950 (Fla. 2003).

Defendant also objects to the State's statements as to Defendant's guilt.  The State stated, "The issue is identity.  He did it.  You know he did it.  The evidence has shown you that he did it."  (Exhibit A, p. 125.)  Citing *Sempier v. State*, 907 So. 2d 1277 (Fla. 5th DCA 2005), Defendant argues the State's remarks were improper.  In *Sempier*, the prosecutor stated, "you have all the testimony that you need.  He did it.  He's guilty.  You should convict him."  *Id.* at 1278. These comments were found to inject the prosecutor's personal belief as to the defendant's guilt.  *Id.* at 1279.

Here, the State's comment that Defendant "did it" was qualified by his statement that the evidence showed the jury he did it.  During opening statements, the defense conceded the victim was robbed.

(Exhibit A, pp. 51, 118.)   Instead, the issue was the identity of the perpetrator.   The State argued at closing there was no misidentification, and the victim was not mistaken in her identification of Defendant. (Exhibit A, pp. 118–119, 120, 122, 124–125.)   Taken in context, the State was not stating his personal belief as to Defendant's guilt.  Rather, his statements were a fair comment that the evidence showed the identity of the perpetrator was Defendant.  *See Valentine v. State*, 98 So. 3d 44, 56 (Fla. 2012); *Peterka v. State*, 890 So. 2d 219, 235 (Fla. 2004); *Coleman v. State*, 215 So. 2d 96, 98 (Fla. 4th DCA 1968).

Also, in *Sempier*, the evidence was not overwhelming, in that there was no physical evidence connecting the defendant to the crime and there were important inconsistencies in the victim's identification of the defendant.  *Id.* at 1279.  However, in the instant case, the victim's identification of Defendant, while emotional, was not equivocal.  She testified she looked at him when he walked to her cab window the day of the incident and was able to later identify him in a photo lineup. (Exhibit A, pp. 63, 67.)  She also identified him in court.  (Exhibit A, p. 64.)  Also, there was *Williams* rule evidence in support of the victim's identification.[FN 2: At the hearing on the admissibility of *Williams* rule evidence, the Court found the witnesses all picked Defendant out of photo lineups.  (Exhibit B.)]  In addition to identification evidence, there was evidence that Defendant had used the cell phone of his "father figure" to call the cab, as discussed elsewhere herein and in Defendant's motion.

Based on the evidence against Defendant, even if the State's comments were improper, there is no reasonable probability of a different outcome had defense counsel objected.  *See Wickham v. State*, 124 So. 3d 841, 861 (Fla. 2013) (finding the defendant could not demonstrate prejudice where the prosecutor's comments did not fundamentally taint the verdict or deprive the defendant of a fair trial); *Courtemanche v. State*, 24 So. 3d 770, 775 (Fla. 5th DCA 2009) (finding a comment including the prosecutor's personal opinion of guilt was harmless where there was an abundance of evidence of guilt); *Knight v. State*, 710 So. 2d 648, 649 (Fla. 2d DCA 1998) (finding the defendant

could not show he was prejudiced by counsel's failure to object to an improper comment in light of the evidence against the defendant); *Kent v. State*, 702 So. 2d 265, 269 (Fla. 5th DCA 1997) (comments were harmless where there was no dispute the crime took place and the victim identified the defendant).

Finally, Defendant contends objections would have preserved the issues for appeal.  Because Defendant fails to establish prejudice at trial, this part of his claim fails.  *See Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007).

(Ex. I at 26–30).  Petitioner argued this issue on appeal to the First DCA (Ex. J).  The

First DCA affirmed the lower court's decision without written opinion (Ex. L).

Under Florida law, the standard for reviewing prosecutorial comments is the

following:

Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.  The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.  A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done."  Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d

287, 289 (Fla. 1976)) (other citations omitted).  The prosecutor may not, however,

"'inflame the minds and passions of the jurors so that their verdict reflects an

emotional response to the crime or the defendant rather than the logical analysis of the

evidence in light of the applicable law.'" Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla.1985)).  This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.  A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted).  But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper.  *Id.* at 1507.  Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence.  *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  *See* White v. State, 377 So. 2d 1149 (Fla. 1980).

Additionally, prosecutorial comment upon a general lack of defense evidence is permissible. *See* Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981).

Attempts to bolster a witness by vouching for his or her credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)). A jury could believe that the prosecutor personally believed in the witness' credibility "if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony." *Id.* (citation omitted). Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2) the prosecutor implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony. United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing Sims, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." United

States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991).  Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).  Likewise, a prosecutor may reply to remarks, comments, or assertions made by defense counsel. *See* United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law."  Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S.

637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).   Thus, to establish prosecutorial

misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must

have been improper; and (2) the comments must have rendered the trial fundamentally

unfair.  *See* Eyster, 948 F.2d at 1206 (citations omitted); Brooks v. Kemp, 762 F.2d

1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106

S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987);

Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is

required only when the error upon which it rests is so prejudicial as to vitiate the entire

trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

The transcript of Petitioner's trial shows that prior to the parties' opening

statements, the trial court instructed the jury that their verdict must be based solely on

the evidence or lack of evidence, and the law (Ex. Q at 43).  The court instructed the

jury that the attorneys would be making opening statements in which they would tell

the jury the evidence which they believed would be presented during trial, but the

court cautioned that what the lawyers said during opening statements was not

evidence and should not be considered as such (*id.* at 44).  The court further

instructed:

> It is up to you to decide what evidence is reliable.  You should use
> your common sense in deciding which is the best evidence and which

evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable, or less reliable than other evidence.  You should consider how the witnesses acted as well as what they said.

Some things that you should consider are:  Did the witness seem to have an opportunity to see and know the things about which the witness testified?  Did the witness seem to have an accurate memory?  Was the witness honest and straightforward in answering the attorneys' questions?  Did the witness have some interest in how the case should be decided?  And does the witness' testimony agree with other testimony and other evidence in the case?

You may rely upon your own conclusions about any witness.  A juror may believe or disbelieve all or any part of the evidence or testimony of any witness.

(Ex. Q at 48–49).

During the State's opening statement, the prosecutor told the jury that Petitioner was charged with getting into a cab, attacking the cab driver, Ms. Joiner, with his hands, pulling out a firearm, and taking Ms. Joiner's money (Ex. Q at 50).  The prosecutor told the jury that Ms. Joiner would explain specifically what happened in the cab, and that she had a good opportunity to see the robber (*id.*).  The prosecutor told the jury that Ms. Joiner would tell them that after she was robbed, she called 911, and she would tell the jury "how this whole situation made her feel" (*id.*).  The prosecutor told the jury that the investigating police officers would testify regarding their investigation, including presenting Ms. Joiner with a photo lineup (*id.*).  The

prosecutor told the jury that they would have an opportunity to see the photo lineup and the person whom Ms. Joiner identified as the robber (*id.* at 50–51).

Defense counsel centered his opening statement on the State's obligation to prove beyond a reasonable doubt that Petitioner was the person who robbed Ms. Joiner.  Counsel argued:

> Mr. Crenshaw, he sits here accused of these two crimes [armed robbery and battery].  Now the State has the burden, complete burden to bring in evidence that not just that a crime was committed, they should be able to make that burden, someone robbed Ms. Joiner, but that it was Mr. Crenshaw that did it.
>
> Listen to the evidence about how upset she was.  Listen—look for the amount of time, the opportunity that she had to observe.  Listen to the description that she gave officers of a young, skinny black male between 5'5" and 5'7" who was wearing a hat with earmuffs on it.
>
> Look at the photo array, the lineup, the photo lineup and use your common sense when you're reaching your decision today.  You can look to the evidence and the evidence alone that the State is going to present, not because you feel sympathy towards the victim or sorry for anybody, but because you think somebody did something.  You have to reach a verdict based upon an abiding conviction of guilt.

(Ex. Q at 51–52).

Dewann Joiner testified that on January 12, 2012, she was terrified and afraid of being shot when Petitioner got into her taxicab, started beating her, and pulled a gun on her (Ex. Q. at 56–57, 66).  The audiotape of Ms. Joiner's call to 911 was

admitted into evidence over defense counsel's objection (*id.* at 59–60).  The State also admitted four photographs of Ms. Joiner and her cab after the robbery (Ex. Q at 60–61, Ex. A at 180–83).   Upon viewing the photographs, Ms. Joiner became emotional and requested a tissue (Ex. Q at 60–61).  Ms. Joiner testified that after the robbery, she went home to Texas because she was scared (*id.* at 62).  She testified that she identified the robber in a photographic lineup (*id.* at 62–64).  The photo lineup was admitted into evidence (Ex. A at 185–86).  Ms. Joiner also identified Petitioner in court as the robber (Ex. Q at 64).

During defense counsel's cross-examination, counsel continued to develop the theory that Ms. Joiner's fear and the short amount of time she had to observe the robber caused her to identify the wrong person:

> Q.  When you [sic] pulled out this thing that you described as a gun, you stated you weren't—you're not very familiar with guns. . . . Could you tell for sure that was a real gun?

> A.  To me, I just know— I wasn't trying to find out.  I just know it looked like a gun.

> Q.  You were very, very afraid?

> A.  Yes.

> Q.  Now, he did this after he hit you?

> A.  Yes.

Q.  And as soon as he started hitting you, you—I think you said you became terrified and you were afraid and asked him what was he doing?

A.  Yes.

(Ex. Q at 66).

Raymond Stewart, the operations manager at Yellow Cab of Pensacola, identified a Smart Search Report from the company's system, which archives telephone numbers and addresses as people call the company and request cabs (Ex. Q at 69–73).  The Report was admitted into evidence (Ex. A at 184).  Mr. Stewart testified that shortly before the robbery, a person who identified himself as "CJ" called for a pickup at 5101 Cranston Avenue, and Ms. Joiner reported to that address for the fare (Ex. Q at 69–73).

Eddie Workman, who was a deputy sheriff at the time of the robbery, testified that he responded to the dispatch from Ms. Joiner's 911 call (Ex. Q at 74–75). Workman testified that Ms. Joiner provided a physical description of the robber, and that she seemed afraid (*id.* at 75).

On cross-examination, defense counsel questioned Deputy Workman further about Ms. Joiner's demeanor:

Q.  You said the victim was scared when you talked to her, various levels, people respond to things differently.  Her demeanor, how was she?  How was she acting?

A.  I believe she was nervous and crying, if I remember correctly.

Q.  Did it take a while to get any information from her while she was upset?
. . . .
A.  I believe I gave her a statement and just let her fill it out as she felt comfortable.

(Ex. Q at 77).

Investigator Phillip Martin testified that he investigated the Smart Search Report from the Yellow Cab company (Ex. Q at 78–80).  He testified that the telephone number from which the call was placed by "CJ," requesting a cab to 5101 Cranston Avenue, was associated with Mr. Albert Sidney, who resided at 1103 Medford Avenue (*id.* at 80–81).  Investigator Martin testified that the distance between 5101 Cranston Avenue and 1103 Medford Avenue was approximately a few hundred feet (*id.* at 81).

Albert Sidney testified that he was Petitioner's "father figure" (Ex. Q at 84–85).  Mr. Sidney testified that he resided at 1103 Medford Avenue at the time of the robbery (*id.* at 85).  When the prosecutor asked whether Petitioner ever stayed at his house during that time, Mr. Sidney responded, "Yes.  He come and go, yes." (*id.*).

When the prosecutor asked whether Petitioner ever had access to Mr. Sidney's telephone, Mr. Sidney responded, "he could have; he could haven't [sic]" (*id.*).

The prosecutor then advised the court that he intended to present testimony from the "Williams Rule" witnesses, Michael Engeseth, Nan Than, and Joseph Montano.  Prior to the taking of testimony, the court instructed the jury as follows:

> Ladies and gentlemen, I am going to give you an instruction.  And at this time, please pay close attention and follow this instruction.
>
> The evidence that you are about to receive concerning evidence of other crimes, wrongs or acts allegedly committed by the defendant will be considered by you for the limited purpose of proving motive, intent, plan, knowledge, identity, the absence of mistake or accident on the part of the defendant. And you shall consider it only as it relates to those issues.
>
> However, the defendant is not on trial for a crime, wrong or act that is not included in the information, that's the charging document, as you recall.

(Ex. Q at 89–90).

Like Ms. Joiner, all three "Williams Rule" witnesses testified that they were employed as cab drivers with Yellow Cab when they were robbed under circumstances similar to the robbery of Ms. Joiner (Ex. Q at 90–107).  Each witness identified Petitioner as the robber from photo lineups (*id.*), and the photo lineups were admitted into evidence (Ex. A at 187–90).

During his closing argument, the prosecutor referenced Ms. Joiner's demeanor

on the stand as well as during her 911 call, suggesting that it was relevant to prove that

Petitioner put Ms. Joiner in fear, which is an essential element of robbery (*see* Ex. Q

at 138–39):[11]

> He punches her in the face, pulls the gun on her, steals her money.
> And then he tells Ms. Joiner to leave or he will shoot her.  Why is that
> important?  Well, he wants her out of there, obviously enough. . . . .  It
> works.  She gets out of there.  She calls the cops.  There is the 911 call
> you will hear in a few moments; you will get to listen to.  It worked.  She
> was scared to death.  Did you see her emotion?  Think about that.  Did
> you see her emotion the way—she had to ask for tissue.  She was crying,
> tears in her eyes.  She was scared to death.
>
> Is this a misidentification?  Can you fake that kind of emotion?
> . . . .
> And one thing that I do want to point out now, I don't know if Mr.
> Tatum [defense counsel] caught it or not, but the caller or—excuse me,

---

[11] To prove the crime of Robbery, the State was required to prove the following four
elements beyond a reasonable doubt:

> 1. (Defendant) took the (money or property described in charge) from the person or
> custody of (person alleged).
>
> 2. Force, violence, assault, or putting in fear was used in the course of the taking.
>
> 3. The property taken was of some value.
>
> 4. The taking was with the intent to permanently or temporarily [deprive (victim) of
> [his] [her] right to the property or any benefit from it] [appropriate the property of
> (victim) to [his] [her] own use or to the use of any person not entitled to it].

Fla. Standard Jury Instructions in Criminal Cases, part Two:  Instructions on Crimes, Chp. 15.1
Robbery.

the 911 person said, Are you on Clifton, and she says, Yeah.  At the beginning of the call she said Cranston, okay.  Addresses are important in this case.  That's worth noting, okay.

I will submit, if you listen to that call closely, she gives Cranston at the beginning and changes it to Clifton.  Listen to her.  Listen to the way she's kind of—the emotional state she's in.  She testified today where it was.  It's clear.  This is a mistake of someone that is emotional.  She is scared to death.  She is scared to death.  You know what happened, you can't fake emotion like that.  You can't fake those kind of tears.  You can't do it.  You know what happened.

(Ex. Q at 120, 124).  The prosecutor made no mention of the "Williams Rule

testimony in his first closing argument (*id.* at 114–25).  At the conclusion of his first

closing argument, the prosecutor commented, "The issue is identity.  He did it.  You

know he did it.  You know he did it.  The evidence has shown you that he did it." (*id.*

at 125).

Defense counsel's closing argument included the following comments:

You have the other three individuals show up.  Three other Yellow Cab drivers, three other robberies significant period of time later, weeks later, months later, different parts of town, some distance away, no firearm being taken out, some being threatened with a firearm, one actually—one having a knife.  These aren't so similar as to point to the same person.  They are not so similar as to point to the same person. I mean, that is common sense.  A robbery, robbery [sic] is going to have things in common and that's usually threaten somebody with some type of force to take what they have got; that's a robbery.
. . . .
Misidentification is more likely when you have people that look so similar.  Look at that photo array that Ms. Dewann Joiner was shown.

Look how similar each and every one of those six young men appear. Now, they appear—picked out individuals with certain facial features and clean shaven, she picked out that individual. He—the state attorney said, Did you see her emotion on the witness stand?  How can you fake it?  There is no faking it.  She's upset and almost a year later after that robbery, and it has affected her.  She is still upset.  Once you made the mistake in your mind, that's the mistake.  That is common sense.  It's what she believes.  She believes this man right here is the one that did it. Who else is she going to point out, next to the attorney sitting over here? Yes, but we're not saying that she's a bad person or she came in here and intentionally faked and did something wrong, but she's mistaken.  And her mistaken identity began at the very beginning and it's carried through.  Her pain is real.  Her fear is real.

The trial is about whether or not he did it.  This individual, when there are other possibilities out there.  Now, they're showing you these other photo arrays, mistaken identify [sic]—mistakes can be repeated. Look at those also.  The other exhibits they showed you with the other Yellow Cab drivers.  They have completely different factual patterns that are not similar, are not similar to what Dewann Joiner went through.

Now, her ability to recall.  You're going to have to consider, did she have the ability to recall what happened?  What you do know, what your life experience is going to show you, when somebody reaches such a level of anxiety of fear or just general upsetness [sic] that that is going to affect your ability to process information.  She comes up there early in the morning doing her job and sees some guy, yeah, he walks up, can I sit over there, and gets in and immediately start punching her in the face.  She said she was scared.  She said she was terrified, and she was. The fear and the terror adds to the possibility of the misidentification.
. . . .

But the possibility of the misidentification because of her fear is not going to be sufficient for you to wake up the day after your verdict and be sure that what you did yesterday—if you find him guilty, that was the right thing or a year from now, no, I'm still certain.
. . . .

The reasonable doubt is in her—her upset demeanor.  She was so upset the officer had to give her a written—"Fill this out when you calm down."  She's still upset today.

(Ex. Q at 127–31).

In rebuttal, the prosecutor argued the following with respect to the "<u>Williams</u>

<u>Rule</u>" testimony:

At opening they pointed out why they think this is a misidentification.  They think that Ms. Dewann Joiner was wrong twice, not only when it happened, well, not only when the lineup happened, but also today, she's wrong.  You know she is not wrong because Mr. Engeseth was not wrong.  You know she's not wrong because Mr. Than wasn't wrong.  You know she's not wrong because Mr. Montano wasn't wrong.  This isn't a mistake.  This isn't her getting overly emotional and just picking one random person out of six who, oh, by the way, happens to live a hundred—excuse me, happens to come and go about a hundred feet from where this happened and oh, by the way, happened to use his dad's cell phone.  She's not wrong.  We know she's right because of each of these, each of these lineups. There are similarities.  You heard what they were.  Each one of these people were robbed while being a Yellow Cab driver, not just a cab driver, a Yellow Cab.  It's the same cab company, the same cab company.  Residential areas, not commercial areas, residential areas, basic directions in these others.

A weapon is used or threat of a weapon is used.
. . . .
And then Ms. Joiner is told the same thing that each of these three were told, which was, Get out of here in a specific amount of time or else.  You know she's right.  This isn't her getting overly emotional and pumped up blaming somebody.
. . . .
You're the trier of fact.  But I would submit that this is overwhelming, okay.  This is overwhelming.  The lineup is our starting point.  On top of

that we had an in-court ID, we have location, the way it was done, the
phone number called.  And then when the Defense attacks Ms. Dewann
Joiner's credibility, then you have these three other cases where he did
the same thing.  You know he did it.  Each one of you know he did it.

(Ex. Q at 133–34, 137).

After closing arguments, the trial court instructed the jury (Ex. Q at 137–52).

Those instructions included the instruction that the jury could consider only the

evidence introduced at trial, and that it was up to them to decide what evidence was

reliable (*id.* at 144–45).  With regard to the reliability of witnesses, the court

instructed the jury to consider how the witnesses acted, as well as what they said, and

that they should consider whether the witness seemed to have an opportunity to see

and know the things about which the witness testified (*id.*).  The court instructed the

jury that each of them may believe or disbelieve all or any part of the evidence or

testimony of any witness (*id.* at 145).  The court instructed the jury that they must not

decide the case because they felt sorry for anyone (*id.* at 147).

The court then repeated the "Williams Rule" instruction:

The evidence that you have received concerning evidence of other
crimes, wrongs, or acts, allegedly committed by the defendant will be
considered by you for the limited purpose of proving motive, intent,
plan, knowledge, identity, the absence of mistake or accident on the part
of the defendant and you shall consider it only as it relates to these
issues.

> However, the defendant is not on trial for a crime, wrong, or act
> that is not included in the information.

(Ex. Q at 148–49).

Based upon this record, the state court reasonably determined that the prosecutor's comments, viewed in their entirety and in the context of the evidence introduced at trial and the arguments of defense counsel, were not improper.  The prosecutor's comments on Ms. Joiner's demeanor were made to rebut defense counsel's suggestion (in his opening statement and his questioning of the witnesses) that Ms. Joiner's emotional state supported the defense theory of misidentification. The prosecutor's comments on the "Williams Rule" evidence were in rebuttal to defense counsel's closing comments on this evidence, and were made for the purpose of arguing the identification issue.  Finally, the prosecutor's comment that Petitioner "did it" was qualified by the prosecutor's statement that the evidence showed the jury that Petitioner robbed Ms. Joiner.  Taken in context, the prosecutor was not stating his personal belief that Petitioner was guilty; rather, he was commenting that the evidence showed that the identity of the robber was Petitioner.

The state court also reasonably concluded that there was no reasonable probability of a different outcome of trial if defense counsel had objected to the prosecutor's comments.  The evidence against Petitioner was strong, including (1) Ms.

Joiner's unequivocal identification of Petitioner as the robber in both the photo lineup and in court, (2) the records from the cab company showing that the person who requested a cab at the location of the robbery used the phone of Albert Sidney, who was Petitioner's "father figure," and the testimony that Petitioner had access to Mr. Sidney's phone, (3) the testimony that the location of the robbery was only a few hundred feet from Mr. Sidney's residence, where Petitioner "came and went", and (4) the evidence that three other victims of robberies under similar circumstances identified Petitioner as the person who robbed them.  Additionally, the trial court's instructions to the jury (to decide the case based solely upon the evidence and not upon emotion or the attorneys' comments, and to limit consideration of the "Williams Rule" evidence), which the jury presumably followed, mitigated the effect of any improper comments on the jury's verdict.

Petitioner failed to demonstrate that the state court's adjudication of his ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of Strickland. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

V.      CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of November 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**